IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| William E. Smith and Frances J. Smith, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiff<br><br>v.<br><br>Life Investors Insurance Company of America,<br><br>　　　　　Defendant | Case No. 2:07-cv-00681<br><br>JURY TRIAL DEMANDED<br><br>**AMENDED COMPLAINT – CLASS ACTION**<br><br>[Electronically filed] |

Filed on behalf of Plaintiff

Counsel of Record for this Party:

Ellen M. Doyle
PA ID No. 21854
Joel R. Hurt
PA ID No. 85841
MALAKOFF DOYLE & FINBERG, P.C.
Firm ID No. 941
Suite 200, The Frick Building
437 Grant Street
Pittsburgh, PA  15219
　　　(412) 281-8400
Fax:　(412) 281-3262

Jack L. Bergstein
PA ID No. 05356
BERGSTEIN & GALPER, P.C.
409 Schoonmaker Avenue
P.O. Box A
Monessen, PA  15062-0551
　　　(724) 684-3444
Fax:　(724) 684-9502

Counsel for Representative Plaintiffs and the Class

## NATURE OF ACTION

1. This class action is brought on behalf of all individuals who either own or are a covered person under cancer-only insurance policies issued or underwritten by Life Investors Insurance Company of America ("Life Investors"), where (i) such policies were issued in Pennsylvania; (ii) the policies provided that Life Investors would pay "actual charges" for covered treatments, services or procedures; and (iii) Life Investors purported to pay benefits under such provisions based on the amounts paid or agreed to be paid to providers by third-parties.

## JURISDICTION

2. Plaintiffs are citizens of the Commonwealth of Pennsylvania and Defendant is a corporation incorporated under the laws of the State of Iowa having its principal place of business in a State other than the Commonwealth of Pennsylvania. The matter in controversy exceeds $75,000, the sum specified by 28 U.S.C. § 1332, exclusive of interest and costs.

## PARTIES

3. Plaintiff William E. Smith is an adult individual who resides in Ruffs Dale, Pennsylvania. He is a covered person under Policy No. 0D1349751, effective October 17, 1998, which was issued by Life Investors to his wife, Frances J. Smith. A copy of this policy is attached as Exhibit 1.

4. Plaintiff Frances J. Smith is an adult individual who resides in Ruffs Dale, Pennsylvania. She is the insured and a covered person under Policy No. 0D1349751, effective October 17, 1998, attached as Exhibit 1.

5. Defendant Life Investors is an Iowa Corporation. Life Investors is or was the issuer or underwriter of cancer-only insurance policies identified as Policy Form Series LPC01PA (the "Policy"), which included the policy covering Plaintiffs. Life Investors' Home Office is located at 4333 Edgewood Road NE, Cedar Rapids, Iowa 52404. The Policy describes its administrative office

as being located at 1020 West Fourth Street, Little Rock, Arkansas 72201, but subsequent communications from Life Investors have identified its administrative office as P.O. Box 36580, Louisville, Kentucky 40233-6580.

## STATEMENT OF THE FACTS ALLEGED

6. The Policy describes itself as being a "Cancer Only Policy" and a "Limited Policy". The Policy insures only for specified treatments, services and procedures once the covered person has "Cancer Positively Diagnosed after the 'waiting period.'" It does not pay benefits for most medical conditions or problems.

7. The "Policy Schedule" of Plaintiffs' policy lists the type of coverage as a "Two Adult Family Cancer Policy" with a deductible of $5,000 and a "Radiation/Chemotherapy/Blood-Calendar Year Maximum" of "Unlimited".

8. As explained by Life Investors in correspondence to Plaintiffs, "Absent an assignment of benefits, your policy pays [benefits] directly to you, regardless of whether you have other health insurance coverage, and you are free to use these monies for any purpose." See January 12, 2006 letter from Life Investors to Plaintiff Frances Smith, attached as Exhibit 2.

9. Under the Policy, Life Investors promises to pay the "actual charges" for certain treatments, services and procedures.

    a. For radiation therapy, the Policy provides for the payment of "the actual charges up to the calendar year maximum shown in the Policy Schedule for radiation therapy treatments authorized and administered by a Radiation Therapist."

    b. For chemotherapy, the Policy provides for the payment of "the actual charges up to the calendar year maximum shown in the Policy Schedule for cancericidal chemical substances including their administration."

    c. For blood, plasma and blood components, the Policy provides for the payment of "the actual charges up to the calendar year maximum shown in

        the Policy Schedule while [the insured is] Hospital Confined or for Outpatient treatment."

    d.    For a donor's expenses related to an insured's bone marrow transplant, the Policy provides for the payment of "the actual charges not to exceed $1000 for medical expenses, including any Hospital charges, directly related to the transplant."

10.    The term "actual charges" is not defined in the Policy.

11.    Prior to April 2006, Life Investors interpreted the term "actual charges" to mean the amount of money a healthcare provider charged for a covered treatment, service or procedure, and it would accept the charges set forth in the provider's bills to insureds as proof of loss under the Policy.

12.    In November 2005, Plaintiff William Smith was hospitalized at Westmoreland Hospital in Greensburg for three days, during which time a biopsy was performed that resulted in Mr. Smith being diagnosed with lung cancer.

13.    In December 2005, Mr. Smith began chemotherapy treatment from the University of Pittsburgh Medical Center, Mount Pleasant ("UPMC").  Plaintiffs submitted a copy of UPMC's bills to Life Investors and was paid for the full charges of UPMC, even though UPMC was paid a lesser amount.  The Explanation of Benefits forms Plaintiffs received from Life Investors prior to April 2006 are attached as Exhibit 3.

14.    Life Investors' practice of paying benefits based on the actual charges billed by the providers was consistent with the federal government's interpretation of "actual charges" under the Medicare program.

15.    It was well-known in the medical benefits industry, long before Life Investors issued a policy covering Plaintiffs, that Medicare and some private insurers obtained agreements with

healthcare providers under which the providers will accept an amount as payment that is less than the amount charged to patients.

16. Medicare historically paid the "reasonable charge for physician's services by limiting Part B payments to the lowest of: (i) the physician's actual charge, (ii) the physician's customary charge, or (iii) the prevailing charge in the physician's locality for similar services." See 42 U.S.C. §§ 1395l(a), 1395u(b); 42 C.F.R. §§ 405.500 et seq.; In re Pharmaceutical Industry Average Wholesale Price Litigation, 460 F. Supp.2d 277 (D. Mass. 2006).

17. The federal government's Medicare website contains a glossary which, as of September 17, 2006, defined "actual charges" to mean:

> The amount of money a doctor or supplier charges for a certain medical service or supply. This amount is often more than the amount Medicare approves. (See Approved Amount; Assignment.)

18. In January 2006, Life Investors announced that it was changing its interpretation of the Policy. Whereas it had previously interpreted "actual charges" to mean the amount of money a healthcare provider charged for a certain medical service or supply, effective April, 2006, Life Investors would interpret "actual charges" to mean the amount paid to and accepted by the healthcare provider as payment for the medical service or supply.

19. Life Investors announced its new interpretation in a letter to policyholders dated January 12, 2006. This letter advised policyholders that on or after April 1, 2006, Life Investors would no longer accept healthcare providers' bills to insureds as proof of loss under the Policy, and would instead require policyholders to submit additional information concerning the amounts providers accepted as payment in order to support a claim for benefits. A copy of the January 12, 2006 letter sent to Plaintiff Frances Smith, is attached as Exhibit 2.

20. The January 12, 2006 letter from Life Investors to Frances Smith stated:

4

> Your policy provides a number of different types of benefits, including benefits based upon the "actual charges" for certain kinds of medical services, such as radiation therapy and chemotherapy treatments. Absent an assignment of benefits, your policy pays these monies directly to you, regardless of whether you have other health insurance coverage, and you are free to use these monies for any purpose.
>
> "When submitting a claim for these types of benefits, it is important to submit the appropriate information and documentation showing the actual charges <u>being paid to and accepted as payment by the healthcare provider</u>. . . ." [Emphasis added.]
>
> Doctors, hospitals, and other healthcare providers will often send informational statements to the patient that contain "list" prices or "standard" rates for their medical services. . . . These statements . . . do not reflect the actual amounts being paid to and accepted by the healthcare provider as payment in full. Consequently, these types of informational statements do not reflect the "actual charges" being incurred and paid. The amounts healthcare providers are actually charging and accepting as payment are often significantly less than the amounts listed on these informational statements.

21. Life Investors' letter makes it clear that, years after Life Investors sold its policies to insureds, it purported to reduce its own payment obligations to pay not the provider's "actual charges" for the relevant cancer treatment, but only the amounts paid by Medicare or other medical insurance for the treatments under those entities' payment arrangements with the providers.

22. Mr. Smith received treatment for chemotherapy on or about April 14, 2006, and again on May 4, 2006, and submitted the bills he received from his providers to Life Investors. Life Investors initially paid no benefits on these claims, then paid the amount it estimated was paid to the provider, and later paid the amount the provider accepted as payment based on documentation submitted by the insured. The Explanation of Benefits forms Plaintiffs received from Life Investors for these claims are attached as Exhibit 4.

23. Life Investors' Explanation of Benefits forms related to these chemotherapy treatments stated:

> The statement you submitted from your provider does not show the actual charges paid to and accepted by the provider as payment in full. Please provide this information which may be available in: (1) a summary notice from medicare or

medicaid; (2) an explanation of benefits from your other insurance; or (3) a statement from your provider showing payments and/or adjustments for each treatment.

24. The Explanation of Benefits forms that Plaintiffs have received from Life Investors for subsequent chemotherapy claims for which they submitted the requested documentation stated:

The "Benefits Payable" amount is based on the actual charges paid to and accepted by the provider as payment in full for covered services. This amount was determined based on the information that you submitted as part of your proof of loss.

All such forms are attached as Exhibit 5.

25. As a result of Life Investors' changed interpretation of the term "actual charges," Plaintiffs received a different, lesser benefit for cancer treatments received after April 1, 2006, than they received for treatments that Mr. Smith received before April 1, 2006, even though all of the treatments were covered under the same policy provision.

26. Life Investors' changed interpretation also results in two insureds who receive identical charges from the same provider for the same treatment, receiving different benefits based on whether the insured is covered by (i) no other insurance, (ii) Medicare, and/or (iii) other private insurance.

27. There is no language in the Policy authorizing such different treatment of similarly situated insureds. The Policy does not contain any provision such as a coordination of benefits clause or a collateral source provision which allows Life Investors to reduce the amounts to be paid for "actual charges" based on the dollar amount payments made by Medicare or other medical insurance. Rather, the Policy states that payments are to be made on the basis of "actual charges," not on the basis of payments made.

28. Other provisions in the Policy demonstrate that Life Investors intended the term "actual charges" to mean the charges providers billed to insureds, rather than the amount providers

6

accepted as payment from Medicare or elsewhere. For instance, the Policy provides "If you undergo a bone marrow transplant we will pay the following expenses incurred by your donor: . . . (b) the actual charges not to exceed $1000 for medical expenses, including any Hospital charges, directly related to the transplant," but later clarifies that Life Investors "will not pay any medical expenses under item (b) above which are provided free of charge." (Ex. 1 at p. 8, Item 16). This provision expressly acknowledges that there may be "actual charges" associated with medical expenses which are provided free of charge. The provision also demonstrates that Life Investors knew how to draft a limitation on its promise to pay actual charges but did not include such a limitation in the provisions of the Policy promising to pay the actual charges for radiation therapy, chemotherapy and blood, plasma and blood components.

29.     The Policy provides benefits for other covered treatments, services and procedures, that are unrelated to the amounts the healthcare providers accepted as payment. As examples, the Policy provided a specified dollar amount as the benefit for the following: laboratory and diagnostic tests ($150); additional surgical opinions ($150); physical therapy sessions ($25); speech therapy sessions ($25); removal of Skin Cancer ($200 per diagnosis); private duty nursing services during hospital confinement ($100 per day); and confinement in a Hospice Center ($75 per day).

30.     The Policy also provides for the payment of "Usual and Customary Charges" for covered surgery, biopsies, experimental treatment and prosthetic devises. "Usual and Customary Charges" was defined in the Policy to mean "The normal and reasonable charge for a service, an apparatus, or medicine in the geographic area where provided." Certain other benefits were payable under the Policy only based upon the insured's "expenses."

31.     In once instance, the Policy provides for a benefit before the insured has received any medical treatment, services or procedures. The Policy provides that "Upon the Initial Diagnosis of

internal Cancer (the first time Positively Diagnosed) of any person covered under this policy, we will pay a one time benefit of $2,500."

32. Life Investors' changed interpretation of "actual charges" imposes a new and unauthorized burden on insureds to submit documentation of the amounts actually paid by Medicare or other insurance to a healthcare provider for a covered treatment, service or procedure, which may not be available to the insured or available only in a form that bears no relationship to the treatment, service or procedure received.

## CLASS ACTION ALLEGATIONS

33. Plaintiffs bring this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and a class defined as follows:

> All individuals who either own or are a covered person under cancer-only insurance policies issued or underwritten by Life Investors Insurance Company of America ("Life Investors"), where (i) such policies were issued in Pennsylvania; (ii) the policies provided that Life Investors would pay "actual charges" for covered treatments, services or procedures; and (iii) Life Investors purported to pay benefits under such provisions based on the amounts paid or agreed to be paid to providers by third-parties.

34. The class is so numerous as to make it impracticable to bring all members of the class before the Court. The exact number of class members is unknown but can be determined from records maintained by Life Investors. In many instances such persons are unaware that claims exist on their behalf.

35. Common questions of law and fact affect the rights of each member of the class and a common relief by way of damages and a declaratory judgment are sought for the class. Among the predominating common questions of fact and law are:

    a. Whether Life Investors insured Plaintiffs and the members of the class under policies which provided for Life Investors to pay certain benefits based on the "actual charges" of the providers.

8

    b.    Whether Life Investors changed its interpretation of the Policy and began paying benefits based not on the "actual charges" but instead on the amounts paid to healthcare providers by third-party payors such as Medicare and private insurance.

    c.    Whether Life Investors' changed interpretation of the term "actual charges" in the Policy, and its related reduction in its payment of benefits, constitutes a breach of contract.

    d.    Whether Life Investors' conduct violates 42 Pa. C.S.A. § 8371.

    e.    Whether Plaintiffs and the class are entitled to declaratory relief holding that the term "actual charges" in the Policy refers to the charges actually made by the providers rather than the amounts the paid to healthcare providers by third-party payors such as Medicare and private insurance.

    f.    Whether Plaintiffs and the class are entitled to damages as a result of a breach of contract by Life Investors.

36.    Plaintiffs' claims are typical of the claims of the class. They are covered persons under a cancer-only policy issued by Life Investors that provided benefits based on "actual charges," but Life Investors has only paid them benefits based on the amounts paid to Mr. Smith's healthcare providers by other payors.

37.    Plaintiffs will assure the adequate representation of all members of the class, and have no conflicts with class members in the maintenance of this class action. They are aware that they cannot settle this action without court approval. Plaintiffs' interests in this action are antagonistic to the interests of Life Investors and they will vigorously pursue the claims of the class.

38.    Plaintiffs will fairly and adequately protect the interests of the class. Counsel are qualified and experienced in class action litigation and have handled many class actions.

39.    This action is suitable to proceed as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the members of the class predominate over individual questions, and this class action is superior to other available methods for the fair and efficient

adjudication of this controversy. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be encountered in the management of this matter as a class action, and a class action is manageable and superior to other methods of adjudicating this matter.

## COUNT ONE
## For Breach of Contract

40. The foregoing allegations are incorporated as if set forth in their entirety.

41. Plaintiffs and the members of the class are all covered persons under Life Investors' insurance policies who are entitled to receive benefits under those policies in accordance with their terms.

42. Life Investors provided in its policies for Plaintiffs and the members of the class to receive benefits for treatments for, *inter alia*, radiation, chemotherapy and blood products based upon "actual charges."

43. Life Investors has not paid benefits under its policies for those treatments, services and procedures based upon the providers' actual charges. Rather it has paid on the basis of the amounts accepted by the providers as payment from third-party payors.

44. Life Investors has breached the terms of its policies and not paid benefits on the bases set forth in the policies.

45. Plaintiffs and the members of the class have suffered damages in the form of benefits not paid at their actual charges, plus interest thereon.

## COUNT TWO
## For Bad Faith Conduct

46. The foregoing allegations are incorporated as if set forth in their entirety.

47.     Life Investors has acted in bad faith towards Plaintiffs and the class by its unilateral decision to change its existing interpretation of the parties' intent at the time of its issuance of the policies so as to deny claims based on the "actual charges" provisions of the Policy and to instead pay benefits only to the extent of the dollar amounts paid by other medical benefits plans or Medicare, even though such dollar amounts are less than the amount of money a healthcare provider charged for radiation, chemotherapy and blood products.

48.     Life Investors lacked a reasonable basis for refusing to pay benefits where it was aware of its existing interpretation of the parties' intent, was aware that its new interpretation benefitted itself at the expense of its insureds, particularly those who had already been diagnosed with cancer, and were receiving treatment, but proceeded to deny them benefits for the amounts actually charged them by their health care providers for radiation, chemotherapy and blood products. Life Investors knew of its lack of reasonable basis, because it drafted the Policy and had, since the Policy's inception until April 2006, interpreted "actual charges" to have this meaning and paid such amounts as benefits.

49.     Life Investors' conduct violates 42 Pa. C.S.A. § 8731.

50.     Plaintiffs and the members of the class have suffered damages in the form of benefits not paid at their actual charges, plus interest thereon, as a direct and proximate cause of Life Investors' bad faith conduct.

## COUNT THREE

### For Declaratory Relief

51.     The foregoing allegations are incorporated as if set forth in their entirety.

52.     Plaintiffs and the class are entitled to declaratory relief holding that the term "actual charges" as used in class members' policies means the actual charges of healthcare providers for the

services, treatments and procedures performed, rather than the amounts the providers were paid by third-party payors.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request the following relief against Defendant Life Investors Insurance Company of America:

1. That Plaintiffs' claims be certified as class claims, that Plaintiffs William and Frances Smith be certified to represent the class in their claims as set forth herein, and that Ellen M. Doyle and Joel R. Hurt be appointed to represent the class.

2. That this Court find and declare that the term "actual charges" as used in class members' policies means the actual charges of healthcare providers for the services, treatments and procedures performed, rather than the amounts the providers were paid by third-party payors.

3. That this Court find and declare that Life Investors has breached and continues to breach its insurance contracts by paying the amounts that providers were paid by third-party payors as benefits where the policies provide for the payment of actual charges as benefits.

4. That this Court find and declare that Life Investors has violated and continues to violate 42 Pa. C.S.A. § 8731 through its unreasonable revised interpretation and application of the "actual charges" policy provisions.

5. An award on behalf of Plaintiffs and the class against Life Investors of damages, interest, punitive damages, attorneys' fees, and such other items as may be allowed to the maximum extent permitted by law.

6. Such other and further relief as this Court deems reasonable and just.

**A JURY TRIAL IS DEMANDED**.

Respectfully submitted,

**MALAKOFF DOYLE & FINBERG, P.C.**


By_____/s/ Ellen M. Doyle_____
      Ellen M. Doyle, PA ID No. 21854
      Joel R. Hurt, PA ID No. 85841
Suite 200, The Frick Building
437 Grant Street
Pittsburgh, PA  15219
      (412) 281-8400
Fax:  (412) 281-3262

Jack L. Bergstein, PA ID No. 05356
**BERGSTEIN & GALPER, P.C.**
409 Schoonmaker Avenue
P.O. Box A
Monessen, PA  15062-0551
      (724) 684-3444
Fax:  (724) 684-9502


Counsel for Representative Plaintiff and the Class

Dated: July 11, 2007

13

**CERTIFICATE OF SERVICE**

This is to certify that on this 11th day of July, 2007, I electronically filed the foregoing "Amended Complaint – Class Action" with the Clerk of Court using the CM-ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Perry A. Napolitano, Esq.
Colin E. Wrabley, Esq.
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219

*Attorneys for Defendant*

/s/ Ellen M. Doyle