# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM E. SMITH, on behalf of himself and all others similarly situated, | ) ) ) | |
| | ) | 2:07-cv-681 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| LIFE INVESTORS INSURANCE COMPANY OF AMERICA, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

Pending before the Court are the following: PLAINTIFFS' MOTION TO DISMISS OR STRIKE DEFENDANT'S COUNTERCLAIM (Document No. 55); PLAINTIFFS' MOTION FOR LEAVE TO AMEND CAPTION AND FILE THIRD AMENDED COMPLAINT (Document No. 63)[1]; OBJECTIONS TO SUBPOENA PURSUANT TO F.R.C.P. 45(c)(2)(B) filed by Excela Health Westmoreland Hospital ("Westmoreland") (Document No. 72); PLAINTIFFS' MOTION TO MODIFY SUBPOENA TO FRICK HOSPITAL (Document No. 73); PLAINTIFFS' MOTION TO MODIFY SUBPOENA TO HIGHMARK BLUE CROSS BLUE SHIELD ("Highmark") (Document No. 74); PLAINTIFFS' MOTION TO MODIFY SUBPOENA TO UNIVERSITY OF PITTSBURGH CANCER INSTITUTE ("UPCI") (Document No. 75); PLAINTIFFS' MOTION TO QUASH SUBPOENA TO WESTMORELAND HOSPITAL (Document No. 76); DEFENDANT LIFE INVESTORS' MOTION FOR ENTRY OF AN ORDER AMENDING STIPULATED PROTECTIVE ORDER

---

[1]Also pending, but not ripe for disposition, is Plaintiff's Motion for Class Certification (Document No. 67).

(Document No. 82); HIGHMARK INC.'S MOTION TO QUASH, IN PART, SUBPOENA

(Document No. 88); and THIRD PARTY, UNIVERSITY OF PITTSBURGH CANCER

INSTITUTE'S MOTION TO QUASH AND/OR AMEND SUBPOENA (Document No. 98).

These matters have been thoroughly briefed and are ripe for resolution.

Procedural History

      This case was originally filed in the Court of Common Pleas of Westmoreland County

and was removed to this Court in May 2007.  After Life Investors filed a motion to dismiss for

failure to join an indispensable party, namely Frances J. Smith, Plaintiffs filed an amended

complaint in July 2007.  After the Court denied Defendant's second motion to dismiss, Life

Investors filed an answer in November 2007.  The case was subsequently stayed pending

resolution of Defendant's motion to transfer the case to the Judicial Panel on Multidistrict

Litigation ("MDL Panel").  The MDL Panel denied the motion and the case remained in this

Court for further proceedings.

      Pursuant to the case management order, the deadline to amend the pleadings was April

30, 2008.  On August 20, 2008, the Court granted Plaintiffs' motion to file a Second Amended

Complaint to expand the definition of the class to include all policies "administered" by Life

Investors, which would encompass policies issued by a former but now merged subsidiary,

Bankers United Life Assurance Company ("Bankers").  On September 2, 2008, Defendant filed

an Answer to the Second Amended Complaint and, for the first time, asserted a Counterclaim

(Document No. 48).

Motions Relating to the Pleadings

        The Court will first resolve the motions that relate to the pleadings, as those

determinations will affect the relevant scope of discovery. Plaintiffs seek to to strike Defendant's

counterclaim, and to amend the caption and file a Third Amended Complaint. The Court will

address these motions seriatim.


        1.      Plaintiff's Motion to Strike Counterclaim

        Plaintiffs ask the Court to strike the counterclaim that Defendants filed in response to the

Second Amended Complaint. In the counterclaim, Life Investors seeks declaratory relief

regarding future claims, application of the "actual charges" language to fictional list prices and

arbitrary chargemaster rates, and whether "phony" bills or statements can constitute proof of loss.

In *State Auto Ins. Co. v. Summy*, 234 F.3d 131(3d Cir. 2000), the Court of Appeals explained that

the Declaratory Judgment Act, 28 U.S.C. § 2201, affords courts unique and substantial discretion

to decide whether or not to declare the rights of litigants. That discretion must be exercised with

an eye to "considerations of practicality and wise judicial administration." *Id.* at 136 (citing

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)).

        Plaintiffs first argue that the counterclaim is merely a redundant mirror-image of their

complaint. However, as Defendant accurately points out, the relief sought in the counterclaim is

extensive and goes far beyond the relatively narrow issue presented by Plaintiffs. Indeed,

Defendant's counterclaim would involve a rather far-reaching inquiry into past and future health

care industry billing practices.[2]

It is the very breadth of the counterclaim that troubles the Court. Plaintiffs are seeking a narrow determination which primarily involves contractual interpretation of the term "actual charges."[3] The Counterclaim will have an adverse affect on the just, speedy and inexpensive determination of this action by multiplying and complicating the issues. As the pending motions to quash subpoenas illustrate, numerous difficult discovery issues will arise as a result of this broad inquiry into health care industry billing practices.

In addition, the Court has an interest in promoting judicial economy by preventing duplicative and piecemeal litigation. *Summy*, 234 F.3d at 135. This case was originally filed in the state court. This Court's jurisdiction is based solely upon diversity of citizenship and there is no federal interest at issue. Defendant may obtain the broader declaratory relief that is sought in the counterclaim in another forum. In its motion to transfer this case to the MDL Panel, Defendant noted that there are several pending actions that involve largely the same issues and argued that Arkansas was the "center of gravity" for these cases. Indeed, it appears that Life Investors is currently engaged in discovery relating to health care industry billing practices in the *Pipes* case in the United States District Court for the Eastern District of Arkansas. *See* Life Investors' Response to UPCI's Motion to Quash. Further, the counterclaim was not asserted in this case until Plaintiffs filed their third complaint, long after the pleadings deadline in the case management order had expired. In summary, the Court will exercise its discretion under the

_____

[2]The Counterclaim also alleges that William Smith is a "Covered Person" and not the "insured" and that he did not suffer a "loss."

[3]The complaint has three counts: breach of contract, bad faith, and declaratory relief.

Declaratory Judgment Act and declines to hear and declare the rights sought in the counterclaim.

In accordance with the foregoing, PLAINTIFFS' MOTION TO DISMISS OR STRIKE

DEFENDANT'S COUNTERCLAIM (Document No. 55) is **GRANTED**.


2.      Plaintiff's Motion to Amend Caption and File Third Amended Complaint

This motion has two prongs.  First, Plaintiffs seek to amend the caption to reflect the

October 2, 2008 merger of Life Investors into Transamerica Life Insurance Company

("Transamerica").  More substantively, however, Plaintiffs also seek leave to file a third-

amended complaint which would expand the proposed class to include persons who purchased

cancer insurance policies from Transamerica, to include persons who purchased non-cancer

policies which contain the "actual charges" language, and to seek class certification pursuant to

Rule 23(b)(2).

In many ways, the positions of the parties are now reversed – it is Defendant who objects

to Plaintiffs' efforts to expand and complicate the litigation.  Plaintiffs argue that the substitution

of Transamerica is necessary to capture ongoing damages to the class that are attributable to the

continued refusal to pay "actual charges" after the merger of Life Investors.  Plaintiffs also note

that the companies' operations were closely intertwined and that a Transamerica employee

actually made the decision that is the core issue of this case.  Defendant argues that the joinder of

Transamerica would be prejudicial by greatly expanding the scope of the case and contends that

Plaintiffs have not shown good cause to justify the amendment.

Plaintiffs have already filed three complaints and the pleadings amendment deadline has

long since expired.  Moreover, the Court agrees with Defendant that the substitution of

Transamerica would unduly complicate the case. As explained above, this case has proceeded

for a year and a half under a relatively narrow focus – the contractual interpretation of the term

"actual charges" – and the Court is exercising its discretion to maintain that limited scope.

Federal Rule of Civil Procedure 25(c) provides for the automatic continuation of a lawsuit

against an original corporate party, with the result to be binding on the successor corporation.

*Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 72 (3d Cir. 1993). The Court may,

but need not, order the successor corporation to be substituted or joined if it believes such action

would facilitate the conduct of the litigation. In light of Rule 25(c), and Defendant's

acknowledgement that Transamerica will be bound as a successor-in-interest to Life Investors as

a matter of law, substitution/joinder of Transamerica is not necessary to facilitate resolution of

the case. Indeed, substitution may lead to confusion and/or disputes regarding the scope of the

case.

In accordance with the foregoing, PLAINTIFFS' MOTION FOR LEAVE TO AMEND

CAPTION AND FILE THIRD AMENDED COMPLAINT (Document No. 63) is **DENIED**.


Discovery Motions

As explained above, this Court has denied the efforts, by both sides, to greatly broaden

the scope of this case. The decision to confine this dispute to the claims asserted in the Second

Amended Complaint has a significant impact on the Court's view of the pending discovery

motions. There are essentially two discovery issues: (1) modification of the Protective Order to

include HIPAA-compliant language; and (2) the scope of third-party discovery. However, there

are three perspectives on the issues – Plaintiffs', Defendant's, and the third party medical

providers and insurer that are the recipients of the subpoenas.


1.      HIPAA

On December 13, 2007, the Court granted the parties' joint motion for entry of a

stipulated Protective Order.  It is essentially uncontested that the Protective Order must now be

modified to include language required by HIPAA for release of "protected health information"

(PHI), as set forth in 45 C.F.R. § 164.512(e)(1)(v).[4]  In *Howard v. Rustin*, 2007 WL 2811828 *2

(W.D. Pa. 2007), the Court explained that "a health care provider may disclose medical

information without violating HIPAA if served with (1) a court order authorizing the disclosure

of such information or, alternatively, (2) a formal discovery request accompanied by certain

required assurances and notices."  A covered entity may disclose only the information authorized

by such a court order.  *Id.*  The revised Protective Order will define the scope of the information

that may be disclosed.

The parties also generally agree that the confidentiality provisions of the Protective Order

should apply to third-party discovery and that the Protective Order would govern medical records

relating to other members of the putative class.  The parties' only substantial dispute concerns the

scope of the information that the Court should authorize in the revised protective order.  The

_____

[4]The regulation provides, in relevant part: "(v) For purposes of paragraph (e)(1) of this section, a qualified protective order means, with respect to protected health information requested under paragraph (e)(1)(ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that: (A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding."

Court turns now to that issue.

### 2.    Scope of Third-Party Subpoenas

The parties have agreed to limit the information/records starting date to October 27, 2005 as to William Smith. Plaintiff proposes a starting date of April 1, 2006 as to other purported class members.[5] Life Investors has agreed to pay for the cost of copies. Defendant informs the Court that discussions are ongoing and that motions to compel are premature. However, Highmark, Frick, UPCI and Westmoreland (collectively, the "Third Parties") and Plaintiffs have now filed motions to limit the discovery sought by Life Investors.

Life Investors seeks extensive information about pricing and billing practices in the healthcare industry in support of its defenses and counterclaim. Plaintiffs seek to define the scope of the third-party discovery narrowly to preclude production of PHI except for information that is specifically related to the provision of health care or payment for such health care, to William Smith or a putative class member after the agreed starting date, limited to treatment for which the Life Investors policy pays "actual charges" as benefits. The Court agrees that this narrower scope, as articulated by Plaintiffs, is appropriate. The Court concludes that information relating to non-cancer treatment and/or cancer treatment for which the Life Investors policy does not pay "actual charges" as a benefit would not be discoverable.

Similarly, the issue of whether list prices or chargemaster rates were paid by Highmark or accepted by Frick, UPCI or Westmoreland is not relevant to the outcome of this action. Simply

---

[5]It is unclear whether Defendant agrees with this date. However, the date appears to be reasonable because Life Investors' revised interpretation of the term "actual charges" apparently became effective for medical services provided on or after April 1, 2006.

put, the billing and payment practices of other entities are not dispositive of the contractual agreement between policyholders such as the Smiths and their insurer, Life Investors, as to the meaning of the term "actual charges" in the Life Investors policy at issue. The agreements between the Third Parties and Medicare are not discoverable. The agreements which Frick, UPCI and Westmoreland entered into with Highmark or other insurers are not discoverable. Highmark's contract with the Teamsters is not discoverable.

The Court does agree with Defendants that even though Plaintiffs are not disputing benefits payments Defendant has made for services provided by Westmoreland, any records relating to cancer treatment provided to Mr. Smith for which Life Investors pays "actual charges" as benefits are discoverable. It may be instructive to compare Defendant's payment practices under the former and revised interpretations of the term "actual charges."

The Court is concerned about imposing an undue burden on the Third Parties of determining which documents are discoverable.[6] The Court agrees with the Third Parties that amending the Protective Order to describe the relevant services and treatments solely by reference to the coverage provided in the Life Investors policy is not sufficient. In effect, the Third Parties would be required to make de facto insurance coverage decisions in responding to the subpoenas. Therefore, counsel for Plaintiffs and Defendant (and subpoenaed entities to the extent necessary and practicable) shall meet and confer in advance to resolve any conflicts with respect to the scope of subpoenas issued to any providers or insurers so that those third parties

---

[6]The Court is also aware of the concerns regarding disclosure of sensitive and proprietary payment information, although those concerns could be addressed by appropriate revision to the Protective Order. Westmoreland suggests an "attorneys eyes only" provision. Given the Court's ruling limiting the scope of the discoverable information, the Court need not decide whether such a provision is necessary at this time.

are not forced to make decisions regarding relevancy.  Highmark suggests a list of providers,

dates of service and specific procedure codes, or alternatively, that it produce all the records to

Plaintiffs for screening.  Plaintiffs contend that Life Investors should already possess a

computerized list of the procedures for which it provided coverage.  The Court makes no

findings regarding these suggestions and will allow counsel an opportunity to develop the most

appropriate methodology.[7]

In accordance with the foregoing, the OBJECTIONS TO SUBPOENA PURSUANT TO

F.R.C.P. 45(c)(2)(B) filed by Excela Health Westmoreland Hospital ("Westmoreland")

(Document No. 72); PLAINTIFFS' MOTION TO MODIFY SUBPOENA TO FRICK

HOSPITAL (Document No. 73); PLAINTIFFS' MOTION TO MODIFY SUBPOENA TO

HIGHMARK BLUE CROSS BLUE SHIELD ("Highmark")[8] (Document No. 74); PLAINTIFFS'

MOTION TO MODIFY SUBPOENA TO UNIVERSITY OF PITTSBURGH CANCER

INSTITUTE ("UPCI") (Document No. 75); PLAINTIFFS' MOTION TO QUASH SUBPOENA

TO WESTMORELAND HOSPITAL (Document No. 76); DEFENDANT LIFE INVESTORS'

MOTION FOR ENTRY OF AN ORDER AMENDING STIPULATED PROTECTIVE ORDER

(Document No. 82); HIGHMARK INC.'S MOTION TO QUASH, IN PART, SUBPOENA

(Document No. 88); and THIRD PARTY, UNIVERSITY OF PITTSBURGH CANCER

INSTITUTE'S MOTION TO QUASH AND/OR AMEND SUBPOENA (Document No. 98) are

---

[7]UPCI's request for a discovery conference with the Court and all affected entities is
DENIED without prejudice at this time.

[8]Highmark represented that the correct entity is Keystone Health Plan West, but that it
will overlook this technicality and cause Keystone Health Plan West to produce documents in
accordance with the Court's ruling.  The Court accepts this representation.

all **GRANTED IN PART AND DENIED IN PART**.

Counsel for Plaintiffs and Defendant shall jointly submit a proposed amended Protective Order, on or before December 31, 2008, that: (1) contains the language required by HIPAA for release of medical records, as set forth in 45 C.F.R. § 164.512(e)(1)(v); (2) contains language that extends the confidentiality provisions to third parties; and (3) authorizes third parties to disclose only health information that concerns cancer treatments for which the Life Investors policy pays "actual charges" as benefits, which were provided to Mr. Smith since October 27, 2005 or which were provided to other putative class members since April 1, 2006; and (4) sets forth the methodology for producing such information. If the affected parties cannot agree as to any provision of the proposed amended Protective Order, each shall separately or jointly submit an alternative proposal(s) for the Court's consideration on or before December 31, 2008.

As explained above, counsel for Plaintiffs and Defendant shall meet and confer in advance to determine the scope of subpoenas served on third parties in accordance with the restrictions set forth in this Memorandum Order.

SO ORDERED this 11th day of December, 2008.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:     Ellen M. Doyle, Esquire
Email: edoyle@stemberfeinstein.com
Joel R. Hurt, Esquire
Email: jhurt@stemberfeinstein.com

Colin E. Wrabley, Esquire
Email: cwrabley@reedsmith.com
Perry A. Napolitano, Esquire
Email: pnapolitano@reedsmith.com
Markham R. Leventhal, Esquire
Email: ml@jordenusa.com
Julianna Thomas McCabe, Esquire
Email: jt@jordenusa.com