IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCES J. SMITH, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br>  v.<br><br>LIFE INVESTORS INSURANCE COMPANY OF AMERICA,<br><br>      Defendant. | )<br>)<br>)  2:07-cv-681<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM ORDER

Pending before the Court are: PLAINTIFF'S SECOND MOTION TO COMPEL DISCOVERY PURSUANT TO FED. R. CIV. P. 37 (Document No. 235); and PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS LISTED IN DEFENDANT'S PRIVILEGE LOG (Document No. 239). Defendant Life Investors has filed responses in opposition to the motions (Document Nos. 249, 253), Plaintiff has filed reply briefs (Document Nos. 262, 263), and the motions are ripe for disposition.[1]

This purported class action case has had a protracted and complicated procedural history, which will not be repeated in full. The case primarily involves interpretation of the term "actual charges" in a supplemental cancer insurance policy but Plaintiff has also asserted a "bad faith" claim. On July 9, 2009, the Court issued a Memorandum Order to resolve previous discovery disputes.

---

[1]Also outstanding are a motion to certify a class, an amended motion to certify a class and Plaintiff's motion for partial summary judgment. These motions will be addressed separately.

A. Second Motion to Compel

In this motion, Plaintiff seeks an order which compels Life Investors to: (1) provide complete responses to Interrogatories 3, 4, 8 and Document Requests 10, 38-63, 66-68 and 69-72; (2) produce in-house counsel Mark Edwards for deposition; and (3) to perform an additional search for documents. Plaintiff also seeks an extension of discovery. Defendant contends that Plaintiff has had its responses for many months and improperly waited until the eve of the discovery deadline to file this motion. The Court declines to deny Plaintiff's motions as untimely in light of the circumstances surrounding the rolling discovery in this case and its complex and protracted procedural history. The motion was filed prior to the discovery deadline and relates to the "bad faith" claim which is not a subject of the pending motion for partial summary judgment.

The specific issues will be addressed seriatim in the order presented by Plaintiff. At this stage of the case, the requested information need not be admissible at trial so long as the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

1. Interrogatories 3 and 4

Plaintiff seeks the names and addresses of all insureds covered by Life Investors LPC01PA and BPC01PA policies on or after April 2006 (Interrogatory #3), and of all persons who had submitted "actual charges" claims to Defendant (Interrogatory #4). Plaintiff contends that they are fact witnesses with respect to Life Investors' past practice of paying claims, its revised interpretation of "actual charges" in 2006, and damages. Defendant agreed to provide

redacted claim files in response to Interrogatory 4 without revealing the insureds' identities and stated that it had identified eleven policies on which such claims had been made.

Defendant contends that the discovery of names and addresses of other insureds would invade their privacy and would diminish the company's goodwill with its customers. Plaintiff argues that the identities have become relevant because Life Investors has emphasized in court filings that the Smiths are the only Pennsylvania policyholders to have complained.  Plaintiff further notes that Defendant's privacy objections are mitigated because a Protective Order is in place.

The Court places little weight on Defendant's argument that the Smiths are the only policyholders to have complained.  Nevertheless, the Court concludes that persons who have made "actual charges" claims to Life Investors are potential fact witnesses with discoverable knowledge of how Life Investors treated their claims.  Defendant has already produced the redacted claim files and the other claimants' privacy interests are adequately addressed by the Protective Order.  As to the broader category of policyholders who have not submitted claims, the Court concludes that Plaintiff has failed to articulate a sufficient basis for such discovery. The burden of such discovery is greater and the likelihood that such policyholders would have relevant knowledge of Defendant's treatment of "actual charges" claims is lower.  Defendant shall provide the names and addresses of persons who filed claims in response to Interrogatory 4. Accordingly, this aspect of the motion is GRANTED IN PART AND DENIED IN PART.

    2.    Document Request 10

Plaintiff seeks the identity of agents who sold the insurance policies in question within

Pennsylvania. Plaintiff contends that the agents have highly relevant information, particularly as to the bad faith claim. Defendant objects on the basis of relevance and because Plaintiff is attempting to evade the limit on interrogatories. Defendant points out that Plaintiff's daughter, Mary Pennington, was the insurance agent who sold her the policy and that it has produced all materials related to that specific transaction. Defendant also requests that any contact with the agents of its successor company, Transamerica, be limited to the bounds of a subpoena.

The Court agrees with Plaintiff. Both sides recognize that Ms. Pennington has a unique relationship to this case and therefore her testimony may not be representative of that of an "independent" insurance agent. The knowledge of the Life Investors agents as to the "actual charges" policies and practices may be highly relevant. At this time, Plaintiff seeks the production of documents. The Court will not impose any limitations upon Plaintiff's ability to contact the agents beyond the Federal Rules of Civil Procedure and Rules of Professional Conduct, but suggests that the parties cooperate to facilitate any such discovery. Accordingly, this aspect of the motion is GRANTED.

      3.     Interrogatory 8/ Whitlock's Green Folder

Plaintiff seeks the identity of the persons who made or approved the 2006 change regarding "actual charges" and the documents relied upon by those decision-makers. Defendant filed a supplemental response which essentially referred Plaintiff to the deposition testimony of Connie Whitlock. Plaintiff continues to seek a response which identifies the documents, including Bates-ranges and privilege log numbers, in Whitlock's "green folder" and the documents relied upon by two other individuals who participated in the decision, Brenda Clancy

and Chris Garrett.

Defendant suggests that these requests be denied as moot because it has already produced all the responsive documents and/or listed them on a privilege log.  Defendant offers to provide a complete copy of the contents of the "green folder" to the Court for *in camera* review. Defendant notes that Plaintiff has already deposed Clancy and chose not to depose Garrett and contends that the reference to "any documents relied upon" by them is overbroad, such that its response and supplemental response were sufficient.  Indeed, Defendant represents that there is nothing left to compel.

The Court will accept Defendant's representation.  If Plaintiff develops evidence that the representation was false, misleading or incomplete, the Court will entertain an appropriate motion for sanctions at that time.  However, the Court cannot condone Defendant's apparent game-playing in the manner in which it produced the documents in the "green folder."  *See* Fed. R. Civ. P. 34(b)(2)(E)(I) (documents must be produced as they are kept in the usual course of business).  Defendant shall provide Plaintiff with a copy of all the non-privileged documents contained in the "green folder" and a listing of all the privileged documents which were contained in that folder.  The Court will also accept Defendant's offer to provide a complete copy of the "green folder" for *in camera* review.  In accordance with the foregoing, this aspect of the motion is GRANTED IN PART AND DENIED IN PART.

       4.     Document Requests 38-63

Plaintiff seeks information about the personal financial incentives which may have motivated Defendant's decision-makers to revise the company's interpretation of "actual

charges." In *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 177-78 (E.D. Pa. 2004), the Court authorized discovery to determine whether claims handlers had a financial incentive structure that led to bad faith actions.  Plaintiff contends that its burden to prove bad faith by clear and convincing evidence provides a substantial need to show knowledge or recklessness that outweighs the burdens associated with these requests.  Plaintiff further notes the existence of the Protective Order.

Defendant contends that the production of sensitive personnel file information such as performance evaluations, compensation records and annual reviews is improper.  Defendant further observes that the six employees who were deposed by Plaintiff uniformly responded that their personal compensation was not affected by the revised "actual charges" interpretation.  In *Kaufman v. Nationwide Mut. Ins. Co.*, 1997 WL 703175 (E.D. Pa. 1997), the Court recognized that a heightened standard of relevance was needed to justify disclosure of personnel files, particularly where the information could be obtained in less obtrusive ways such as depositions.  Indeed, *Saldi* cited *Kaufman* with approval for this proposition.

Plaintiff, in reply, states that several of the decision-makers admitted during their depositions that their bonuses were linked, at least indirectly, to the financial performance of the cancer policies at issue.  Plaintiff further notes that Whitlock, Clancy, Adams and Gwin testified that they could not recall the specifics of their compensation arrangements and performance goals.  Upon review of the relevant deposition transcript excerpts, the Court agrees with Plaintiff.  The less obtrusive alternative was explored by Plaintiff and did not yield sufficiently complete answers.  Accordingly, the Court concludes that Plaintiff has appropriately demonstrated a justifiable need for the sensitive employee compensation information as to Whitlock, Clancy,

Adams and Gwin to explore whether Defendant had a motive of financial self-interest. *Greene v. United Servs. Auto. Ass'n*, 936 A.2d 1178, 1190-91 (Pa. Super. 2007). Plaintiff has not met its heightened burden to undertake similar discovery as to other employees. Accordingly, this aspect of the motion is GRANTED IN PART AND DENIED IN PART.

       5.      Document Requests 69 and 71

Plaintiff seeks production of the annual reports of Life Investors and its parent companies for 2003-2008 on the basis that they will provide substantial background information. Plaintiff contends that the parent company reports are relevant because the "actual charges" change was a concerted cross-company effort. Defendant represents that the annual reports do not have any bearing on Plaintiff's claims and given the amount of discovery conducted to date, are not needed to provide "background information."

The Court concludes that annual reports of parent companies need not be produced.[2] However, Defendant shall produce the annual reports of Life Investors (and/or its successor entity) from 2003-2008. This aspect of the motion is GRANTED IN PART AND DENIED IN PART.

       6.      Document Requests 66, 67, 68, 70 and 72

Plaintiff seeks financial information and financial statements of Life Investors and its corporate parent companies. Plaintiff contends that such information is relevant in considering

---

[2]Defendant notes that AEGON USA, LLC's annual reports are publicly available and that Plaintiff used the 2006 annual report as an exhibit during Brenda Clancy's deposition.

punitive damages and to demonstrate how important the change regarding "actual charges" was to the overall corporate financial condition.

Defendant argues, with citation to numerous cases, that information about its net worth is affirmatively inconsistent with the award of punitive damages. However, Defendant's interpretation of the law is not quite accurate - what the Supreme Court actually stated in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 427-28 (2003) (emphasis added) was:

> The wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award. *Gore*, 517 U.S., at 585, 116 S.Ct. 1589 ("The fact that BMW is a large corporation rather than an impecunious individual does not diminish its entitlement to fair notice of the demands that the several States impose on the conduct of its business"); *see also id.*, at 591, 116 S.Ct. 1589 (BREYER, J., concurring) ("[Wealth] provides an open-ended basis for inflating awards when the defendant is wealthy .... **That does not make its use unlawful or inappropriate**; it simply means that this factor cannot make up for the failure of other factors, such as 'reprehensibility,' to constrain significantly an award that purports to punish a defendant's conduct"). The principles set forth in *Gore* must be implemented with care, to ensure both reasonableness and proportionality.

In *Bombar v. West American Ins. Co.*, 932 A.2d 78, 94 & n.14 (Pa. Super. 2007), the Court held that a trial court could consider the net worth of an insurance company's parent corporation in assessing punitive damages against the insurer for bad faith. Indeed, Pennsylvania continues to cite the following as the relevant criteria in assessing punitive damages: (1) the character of the defendant's act, (2) the nature and extent of the plaintiff's harm, and (3) the wealth of the defendant. *See Hollock v. Erie Insurance Exchange*, 842 A.2d 409, 419 (Pa. Super. 2004).

Plaintiff has set forth a prima facie case for punitive damages arising out of bad faith. The Protective Order will adequately address Defendant's concerns regarding the confidential and proprietary nature of the information. A defendant's wealth is a fact that may be considered in awarding punitive damages. Accordingly, this aspect of the motion is GRANTED.

      7.      New Document Search

The Court has already addressed Plaintiff's concerns regarding the manner of production of the "green folder." Plaintiff also seeks a renewed computerized search that would include the terms "charges means," "charges refers to," "charges is defined," "charges billed," and "charge /2s discount." Plaintiff appears to agree that use of the term "charges" would be over-inclusive, but argues that the modified search terms may uncover additional relevant information.

Defendant, in response, contends that 49,000 documents would be retrieved by a search using the term "charges." Defendant has not addressed the burden or impact of the more-limited alternative terms proposed by Plaintiff.

Defendant shall instruct its e-discovery vendor to determine how many documents would be retrieved by using each of the terms set forth above and shall provide that information to Plaintiff's counsel. Counsel for both sides shall then meet and confer in an effort to resolve this issue. If the issue is not resolved, Plaintiff may renew its motion. Accordingly, this aspect of the motion is DENIED WITHOUT PREJUDICE.

      8.      Deposition of Mark Edwards

Plaintiff seeks to take the deposition of in-house counsel Mark Edwards, who served on the DSI Taskforce. Defendant has asserted a blanket attorney-client privilege and has refused to produce Edwards for a deposition. Plaintiff contends that Edwards engaged in non-privileged business activity, such as the work of the task force and the training of claims examiners and customer service personnel. Plaintiff contends that Defendant should be required to assert the attorney-client privilege, if appropriate, on a question-by-question basis. As to the DSI

Taskforce, Plaintiff contends that there is no valid privilege because Edwards was working in a business capacity and/or because the work of the task force has been placed at issue.

Defendant argues that depositions of in-house counsel are disfavored, that no timely deposition notice was provided, that information regarding the DSI Taskforce is available from other sources (including the several depositions of task force members that have occurred), and that any additional information Edwards may possess is privileged because his role on the task force was limited to that of a legal advisor.

Plaintiff's "placed at issue" argument sweeps too broadly. Defendant has not placed specific comments by Edwards at issue, and Plaintiff has conducted extensive discovery of DSI Taskforce activities. Nevertheless, the Court concludes that Plaintiff is entitled to depose Edwards. *See Jamison v. Miracle Mile Rambler, Inc.*, 536 F.2d 560, 565 (3d Cir. 1976) (district court erred by preventing deposition of opposing party's attorney). Indisputably, Edwards was a key member of the DSI Taskforce and is not serving as litigation counsel in this case. For example, Edwards has been used by Life Investors as a key fact witness as to the numerous attorney-client and work product issues that are discussed below. Plaintiff is entitled to explore the business and attorney roles performed by Edwards and the assertions made in Edwards' Declaration. While such depositions are disfavored, the mere fact that Edwards is an attorney is not an absolute bar to the taking of his deposition. 8A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2102 (West 1994). Defendant will have ample opportunity to invoke any applicable privilege on a question-by-question basis. Accordingly, this aspect of the motion is GRANTED.

In accordance with the foregoing, PLAINTIFF'S SECOND MOTION TO COMPEL

DISCOVERY PURSUANT TO FED. R. CIV. P. 37 (Document No. 235) is **GRANTED IN PART AND DENIED IN PART**.

### B.     Privilege Log

Defendant has provided a 106 page privilege log and has withheld 833 documents entirely and redacted 100 other documents. Plaintiff seeks to compel disclosure of four categories of withheld documents: (1) charts prepared by in-house actuary Steven Gwin; (2) four published articles circulated in August 2004; (3) a 185-page report from outside counsel Jordan Burt; and (4) emails from Gwin to other members of the DSI Taskforce. Given that the log was provided in installments and was not finalized until July 26, 2009, this motion is not untimely. The Court will address each category seriatim.

### 1.     Gwin Charts

Plaintiff contends that the 19 charts now at issue are identical to the four charts which the Court ruled on July 9, 2009 were not privileged. Defendant had produced the majority of these charts and has now provided Plaintiff with the only outstanding document. Accordingly, Plaintiff has withdrawn this aspect of the motion (Document No. 247) and it is DENIED AS MOOT.

### 2.     Published Articles

Plaintiff contends that the four articles at issue cannot be privileged because publication destroyed the confidentiality requirement. Defendant argues that the articles (in actuality, a single article listed four times on the log) are protected by the work product doctrine. The

doctrine of work-product immunity "'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998).

Defendant summarily and conclusorily contends that it anticipated litigation in August 2004 and that the article was created for the purpose of litigation even though it was published. Plaintiff responds that Life Investors could not have anticipated litigation in 2004, because the decision to change its interpretation of "actual charges" did not occur until almost a year later.

Life Investors, as the party claiming work-product immunity, bears the burden of showing that the materials in question were prepared in "the course of preparation for possible litigation." *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 94 (3d Cir.1992). It is not necessary that a lawsuit was actually filed. A document is considered to have been prepared in anticipation of litigation if "in light of the nature of the document and the factual situation of the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir.1993) (*citing United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir.1990)). As explained in *Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc.*, 2001 WL 605199 *4 (E.D. Pa. 2001) (citations omitted):

> Generally, a reasonable anticipation of litigation requires existence of an identifiable specific claim or impending litigation at the time the materials were prepared. Advising a client about matters which may or even likely will ultimately come to litigation does not satisfy the 'in anticipation of' standard. The threat of litigation must be more real and imminent than that.

In *United States v. Textron Inc. and Subsidiaries*, 577 F.3d 21 (1st Cir. 2009) (en banc), the Court of Appeals for the First Circuit recently rejected the "because of litigation" test that is

now used by the Third Circuit in favor of a narrower "prepared for litigation" test.  The Court

explained its rationale as follows (citations omitted) (emphasis in original):

> It is not enough to trigger work product protection that the subject matter of a document relates to a subject that might conceivably be litigated. Rather, as the Supreme Court explained, "the literal language of [Rule 26(b)(3) ] protects materials *prepared for* any litigation or trial as long as they were prepared by or for a party to the subsequent litigation." This distinction is well established in the case law.
>
> Nor is it enough that the materials were prepared by lawyers or represent legal thinking. Much corporate material prepared in law offices or reviewed by lawyers falls in that vast category. It is only work done in anticipation of or for trial that is protected. Even if prepared by lawyers and reflecting legal thinking, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision."

*Id.* at 29-30.  The dissent noted the far-reaching implications of this test – which would directly

impact the Life Investors documents now at issue in this case:

> Under the majority's rule, there is no protection for the kind of documents at issue in *Adlman*, namely "documents analyzing anticipated litigation, but prepared to assist in a business decision rather than to assist in the conduct of the litigation." 134 F.3d at 1201-02. Nearly every major business decision by a public company has a legal dimension that will require such analysis. Corporate attorneys preparing such analyses should now be aware that their work product is not protected in this circuit.

*Id.* at 37-38.

Defendant's privilege log describes the documents at issue as: "Article-Publication under

review by counsel for purposes of providing legal review, advice, and comment."  This

description falls far short of meeting Defendant's burden.  The conclusory arguments in

Defendant's brief fare no better.  Indeed, Defendant fails to provide any explanation, beyond bald

assertions, as to why it anticipated litigation in 2004 and why the published articles at issue were

created because of litigation. The "nature of the document" is a published article - which is not consistent with the fundamental purpose of the work product protection. The factual situation is that this article was created a year prior to the decision to change the policy interpretation that eventually triggered this litigation. It cannot fairly be said that the article was prepared in anticipation of litigation. In sum, this aspect of the motion is GRANTED and Defendant shall produce the document(s) at issue.

        3.        185-Page Jordan Burt Report

Plaintiff contends that an undated report prepared by outside counsel Jordan Burt, LLP is discoverable. Defendant has asserted attorney-client privilege, work product and the self-critical analysis privilege. Plaintiff requests that the document be submitted for *in camera* review.

Plaintiff argues that the attorney-client privilege does not apply because Defendant has not proven that the Report contains confidential communications made **_by_** Life Investors **_to_** its attorneys. This is sometimes referred to as the "one-way street" doctrine. Plaintiff cites *Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1264-65 (Pa. Super. 2007), *appeal granted* 935 A.2d 1270 (Pa. 2007)[3], which held that a similar report from outside counsel was not privileged. Plaintiff argues that the work product protection does not apply because the document appears to have been created in early 2005, prior to the decision to change the "actual charges" interpretation. Plaintiff contends that a recommendation as to whether to undertake the changed interpretation is not sufficiently tied to an identifiable specific claim or impending

---

[3]The Pennsylvania Supreme Court heard oral argument in March 2008, but no decision has been issued. Two of the justices recused because they were on the Superior Court panel that issued the decision.

litigation. Plaintiff contends that the "self-critical analysis" privilege has never been recognized by the Third Circuit.

Defendant cites to the factual record in support of its work product assertion. In particular, Defendant states that it is undisputed that a task force was formed to consider "actual charges" and that Jordan Burt was engaged in October 2004 to provide legal advice regarding anticipated litigation over the changed interpretation. In stark contrast to the articles discussed above, the nature of this document is a report prepared by outside counsel regarding possible litigation – which weighs strongly in favor of the protection. The Jordan Burt report presumably contains "opinion work product" which is entitled to the highest protection. The factual background, which involves the solicitation of legal advice in the context of the task force's decision-making, also appears to weigh in favor of the work product protection and is supported by the affidavit of in-house counsel Mark Edwards.

On the other hand, in *Rockwell v. United States*, 897 F.2d 1255, 1265-66 (3d Cir. 1990), the Court of Appeals directed the district court to make a factual determination regarding the "primary motivating purpose behind the creation of the document" to decide whether it constituted work product. The Court has not reviewed the actual Jordan Burt report and the existing record is not sufficient to determine Life Investors' primary motivating purpose. As noted above, Plaintiff will be taking the deposition of Mark Edwards and will have an opportunity to explore this topic. The Court agrees with Plaintiff that the portions of the report which do not disclose confidential communications made by Life Investors to its attorneys for the purpose of obtaining legal advice would not be attorney-client privileged. *Santer v. Teachers Ins. and Annuity Ass'n*, 2008 WL 821060 *1 n.3 (E.D. Pa. 2008). The Court also agrees with

Plaintiff that the "self critical analysis privilege" is not recognized by Pennsylvania or the Third Circuit and does not apply. *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 351 n.12 (3d Cir. 2009); *Joe v. Prison Health Services, Inc.*, 782 A.2d 24, 34 (Pa. Commw. 2001). Thus, if the work product protection does not apply, at least portions of the Report are likely discoverable. Defendant shall provide the Jordan Burt report to the Court for *in camera* review. In sum, this aspect of the motion is TAKEN UNDER ADVISEMENT.

        4.       Gwin Emails

As explained earlier, Steven Gwin was an actuary employed by Life Investors. Plaintiff contends that seven emails sent by Gwin to other members of the DSI Taskforce are not privileged. In-house counsel Mark Edwards was a member of the Taskforce and was a recipient of the emails. Plaintiff argues that the attorney-client privilege does not apply because the communications were not made for the purpose of seeking legal advice, but rather, were business-related and were directed to the entire Taskforce.

Defendant contends that the documents are protected by attorney-client and work product privileges. Specifically, Life Investors argues that disclosure of the emails would reveal its legal concerns and its confidential communications to its in-house lawyer. The description on the privilege log expressly states that the emails relate to "legal review and analysis." As the current record is not sufficient to decide this issue, Defendant shall provide the documents to the Court for *in camera* review. Accordingly, this aspect of the motion is TAKEN UNDER ADVISEMENT.

5.  Redacted Documents

Plaintiff seeks *in camera* review of four emails sent by Gwin to other members of the DSI Taskforce in 2004 that were produced with redactions. Plaintiff contends that the emails contain summaries of business communications regarding ideas to proactively manage and reduce cancer claims.

Defendant contends that the redacted portions represent work product, because Mark Edwards performed legal review of specific areas of interest relating to anticipated litigation. Defendant argues that disclosure would reveal its litigation strategy and communications made to its counsel.

The Court has reviewed the redacted versions of these documents (Document No. 241). Many of the redactions appear to be related to Mark Edwards, although some of the redactions are unspecified. On the other hand, the documents appear to be summaries of business meetings and ideas, as opposed to communications designed to solicit legal advice. The documents were prepared by Gwin, and not an attorney, such that the work product doctrine does not appear to be applicable. In sum, the Court cannot decide this issue. Defendant shall submit redacted and unredacted copies of these documents for *in camera* review. Accordingly, this aspect of the motion is TAKEN UNDER ADVISEMENT.

In accordance with the foregoing, PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS LISTED IN DEFENDANT'S PRIVILEGE LOG (Document No. 239) is **GRANTED IN PART AND TAKEN UNDER ADVISEMENT IN PART.**

Revised Case Management Deadlines

1. Defendant shall produce all referenced documents to Plaintiff on or before October 30, 2009.

2. Defendant shall provide all referenced documents to the Court for *in camera* inspection on or before October 30, 2009.

3. Defendant shall produce Mark Edwards for deposition on or before November 5, 2009.

4. Defendant shall have its e-discovery vendor determine how many documents would be retrieved by use of each term proposed by Plaintiff and shall provide the results to Plaintiff on or before October 26, 2009.  Counsel shall meet and confer within five (5) days thereafter.  If necessary, Plaintiff may file a renewed motion to compel on or before November 5, 2009.

5. Both parties will have the opportunity to file a supplemental brief of five (5) pages or less on or before November 16, 2009, limited to the matters the Court has taken under advisement.

6. The discovery period is extended until December 15, 2009 for the limited purpose of completion of the discovery set forth above.

SO ORDERED this 16th day of October, 2009.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Ellen M. Doyle, Esquire
Email: edoyle@stemberfeinstein.com
Joel R. Hurt, Esquire
Email: jhurt@stemberfeinstein.com
Maureen Davidson-Welling
Email: mdavidsonwelling@stemberfeinstein.com

Colin E. Wrabley, Esquire
Email: cwrabley@reedsmith.com
Perry A. Napolitano, Esquire
Email: pnapolitano@reedsmith.com
Markham R. Leventhal, Esquire
Email: ml@jordenusa.com
Julianna Thomas McCabe, Esquire
Email: jt@jordenusa.com
Irma R. Solares
Email: is@jordenusa.com