**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM E. SMITH, on behalf of himself<br>and all others similarly situated, | ) | |
| | ) | |
| | ) | **2:07-cv-681** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| LIFE INVESTORS INSURANCE | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER OF COURT</u>

Pending before the Court are PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (Document No. 67) and PLAINTIFF'S AMENDED MOTION FOR CLASS CERTIFICATION (Document No. 150). The matter has been thoroughly briefed (Document Nos. 68, 121, 148, 161, 202, 220, 222, 254, 259, 264, 273, 278). Plaintiff amended her motion for class certification to align the class definition with the operative Second Amended Complaint and continues to rely on the legal arguments made in support of her original motion. The motions are ripe for disposition and will be combined for decision. Plaintiff seeks certification of a class defined as follows:

> **All individuals who either own or are a covered person under cancer-only insurance policies administered or underwritten by Life Investors Insurance Company of America ("Life Investors"), where (i) such policies were issued in Pennsylvania; (ii) the policies provided that benefits would be paid based upon "actual charges" for covered treatments, services or procedures; and (iii) Life Investors purported to pay benefits, or indicated that in the future it would only pay benefits, under such provisions based on the amounts providers were paid or agreed to be paid.**

Factual Background

Defendant Life Investors Insurance Company of America ("Life Investors") is a corporation organized under the laws of Iowa and with a principal place of business in Iowa. Bankers United Life Assurance Company ("Bankers Life") merged into Life Investors on December 31, 2001.  Effective October 2, 2008, after this litigation was filed, Life Investors merged into Transamerica Life Insurance Company ("Transamerica").  For convenience and consistency, Defendant will be referred to as "Life Investors."

Plaintiff Frances Smith is a 67-year-old Pennsylvania resident who purchased a supplemental cancer insurance policy written on Life Investors policy form LPC01PA.  Her husband, William E. Smith, was a "covered person" under the policy.[1]   Ms. Smith purchased the policy in October 1998 through her daughter, Mary Pennington, who worked as an insurance agent for Life Investors. Mr. Smith was diagnosed with cancer in November 2005 and began receiving chemotherapy treatments from the University of Pittsburgh Cancer Institute ("UPCI") beginning in December 2005.  He died on December 24, 2008.

At issue in this litigation are the benefits which are based on "actual charges" for the services provided, including chemotherapy, radiation therapy, blood benefits, and ambulance services.  The term "actual charges" is not defined in the Policy.  Ms. Smith chose an unlimited yearly benefit for chemotherapy, radiation and blood benefits and paid a higher premium for this option.  Prior to April 1, 2006, Life Investors paid benefits on the full amount billed by UPCI for Mr. Smith's chemotherapy treatments as set forth on the Explanation of Benefits forms ("EOB

---

[1]Mr. Smith was also covered by Medicare and a Highmark Security Blue Medicare Advantage HMO health plan.

forms") sent by Life Investors to Ms. Smith, rather than the discounted amounts that UPCI

accepted as payment.  The monetary difference between the parties' conflicting interpretations of

"actual charges" is in excess of $275,000.

The proposed class includes all individuals who either own or are covered persons under

Life Investors policy form LPC01PA or substantially identical Bankers Life policy form

BPC01PA supplemental cancer insurance policies issued in Pennsylvania.  Policy forms

LPC01PA and BPC01PA will be referred to collectively as "the Policy."  Life Investors sold the

Policy in Pennsylvania between 1996 and 2002.  Because the Policy provides "supplemental"

insurance, it pays cash benefits directly to the insured, irrespective of whether the medical

expenses of the insured/covered person are paid by other insurance.

The Policy provides approximately 24 different categories of benefits.  Some benefits are

expressed as fixed dollar amounts, other benefits have yearly maximums, some are unlimited and

others are based on "Usual and Customary charges."  The Policy is renewable for life, subject to

the timely payment of premiums.  However, Life Investors may change the premiums

prospectively upon proper notice:

> This policy may be continued for life.  As long as the premium is paid before the
> end of the grace period we cannot cancel this policy.  However, we may from time
> to time change the table of rates that apply to your premiums.  Any such change
> will apply to all policies issued in your Class.  No change in the table of rates will
> take effect for this policy until the Renewal Date next following the date of such
> change.  We will give the Insured written notice at least 31 days prior to any rate
> change.

As a result of rising healthcare and claims costs, Pennsylvania policyholders like Plaintiff have

experienced substantial premium increases over the past eight years.  Life Investors predicts that

if it is required to pay "actual charges" based on list prices, there will be substantial additional

premium increases over the next eight years.  *See* Declarations of actuary Steven Gwin and expert witness Glen Alan Melnick, Ph.D.

The "actual charge" language originated more than thirty years ago.  At that time, medical providers generally issued bills which reflected the actual amounts legally owed and the amounts being paid to the providers for the services rendered.  Billing practices in the healthcare industry have significantly changed over the ensuing years, with increasing numbers of medical providers issuing statements that contain "list" or "chargemaster" prices, rather than the amounts that those providers accept as payment in full for their services from third-party payors such as Medicare and private insurers.

Life Investors stopped selling the Policy in 2002.  In 2004, Life Investors and several related companies appointed a "Discontinued Supplemental Insurance Taskforce" ("DSI Taskforce") to investigate the causes of premium increases.  The DSI Taskforce identified the manner in which it paid "actual charges" as an issue.  On January 12, 2006, Life Investors sent a notice to 303 Pennsylvania policyholders, including Plaintiff, to explain that it was changing the manner in which it would pay "actual charges" benefits.  The letter explained that information statements from medical providers to patients that contain "list" prices are not true "bills" and do not reflect the actual amounts accepted as payment by the medical providers.  Accordingly, Life Investors stated that effective April 1, 2006, policyholders would be required to submit as proof of loss "documentation which shows the amount of the actual charges being paid to and accepted by the healthcare provider as payment in full for the medical services rendered."  Mr. Smith continued to receive chemotherapy treatments after April 1, 2006, but Life Investors paid as benefits only the discounted amounts accepted as payment by UPCI rather than the full amount(s)

4

billed by UPCI to the Smiths.

Ms. Smith is a retired laundry worker with a high school education.  Throughout her adult life, she deferred to her husband on all household financial matters, including interactions with Life Investors and the prosecution of this lawsuit.  When William Smith became incapacitated, Ms. Smith's daughter Frances began managing the household financial matters on her behalf.  Ms. Smith testified in her deposition about her lack of substantive knowledge regarding her claims, nervousness which may prevent her from being able to testify, confusion and poor memory.  *See, e.g.,* Deposition at 27-28 ("My husband did all of this and I get nervous and I don't remember things like – just because I just get nerves and I get nervous over it and I could be telling you a wrong thing and not a wrong thing, because I just get nervous.") She is not well-versed in the legal theories of this action, the differences in the various complaints or the positions of the parties in the case.  For example, when asked during her deposition whether she was asserting claims for bad faith and declaratory relief, she answered "No."[2]  Deposition at 43.  Smith testified that she does not know who is in the class, and has not thought about how the lawsuit might affect premiums for other policyholders.  Deposition at 173.  Smith summarized that her claim is that Life Investors "haven't been paying what they are supposed to pay."  Deposition at 42.

Procedural History

The original complaint in this case was filed by William Smith on April 12, 2007 in the Court of Common Pleas of Westmoreland County, Pennsylvania.  The original class definition

---

[2] The Court is aware that Ms. Smith was deposed just two weeks before her husband succumbed to cancer.

comprised  **"all individuals in Pennsylvania who (i) were covered under Life Investors cancer-only policies; (ii) received covered treatments, services or procedures for which Life Investors paid "actual charges"; and (iii) were paid lesser benefits based on the amounts paid to healthcare providers."**  In other words, the class was limited to current claimants, i.e., persons who had already accrued claims for "actual charges" which had been allegedly underpaid.  Life Investors removed the case to this Court based on diversity jurisdiction.  In connection with a motion to dismiss the class, Life Investors submitted an affidavit from James Byrne (Document No. 8), who averred that only six people met the criteria set forth in the proposed class.

In July 2007, an amended complaint was filed, which added Frances Smith as a Plaintiff and modified the class definition.  Defendant filed a motion to dismiss the amended complaint, which the Court denied.  Defendant then filed an answer, the parties participated in an unsuccessful mediation, and Defendant unsuccessfully sought to transfer this case to a Multi-District Litigation ("MDL") panel to consolidate it with several similar cases pending in other jurisdictions.

On August 20, 2008, the Court granted Plaintiff's motion to file a Second Amended Complaint to include persons covered by Bankers Life Policy Form BPC01PA.  The Second Amended Complaint asserts three causes of action: breach of contract, bad faith, and declaratory relief.  As set forth above, Plaintiff now seeks certification of a class comprised of all persons covered under policies issued in Pennsylvania in which Life Investors has either: (1) purported to pay "actual charges" benefits based on the amounts providers were paid or agreed to be paid; or (2) indicated that it would do so in the future.  In effect, the current alleged putative class

6

includes all covered persons under the Policy, regardless of whether or not they have filed a

claim.  Defendant filed an Answer and Counterclaim.  Plaintiff sought to file a third amended

complaint.  By Memorandum Order dated December 11, 2008, the Court struck the counterclaim

and denied Plaintiff's motion to amend the complaint yet again.[3]

The Court has held the motions for class certification under advisement for several

reasons. *See generally Weiss v. Regal Collections*, 385 F.3d 337, 347-48 & n.17 (3d Cir. 2004)

(discussing judicial administration considerations in allowing class certification motions to "play

out").  Since the filing of the original motion for class certification, the Court of Appeals for the

Third Circuit has issued a landmark opinion in *In re Hydrogen Peroxide Antitrust Litigation*, 552

F.3d 305 (3d Cir. 2008), which significantly developed the law regarding class certification.  In

addition, the parties have through discovery created a record sufficient to enable the Court to

delve beyond the pleadings and conduct the type of in-depth analysis required by *In re Hydrogen

Peroxide*.  In particular, the parties filed concise statements of material facts in connection with

Plaintiff's motion for partial summary judgment,[4] and discovery is now complete except for the

matters addressed in the Court's Memorandum Order of October 16, 2009.  The Court has also

monitored the progress of putative class actions in other jurisdictions, particularly the nationwide

classes proposed in *Gooch v. Life Investors Ins. Co. of America*, Case No. 07-16 (M.D. Tenn.),

and *Runyan v. Transamerica Life Ins. Co.*, Case No. CV-09-2066-3 (Circuit Court Pulaski

County, Ark.).  The *Gooch* action is presently closed administratively pending an appeal to the

United States Court of Appeals for the Sixth Circuit and Smith has opted out of the *Runyan*

---

[3]The Court's order also resolved numerous discovery disputes.

[4]The Court has resolved Plaintiff's motion for partial summary judgment in a separate
Memorandum Order which will be issued contemporaneously.

action.  The Court concludes that there is no compelling reason to further withhold resolution of

the class certification motions in this case.

Standard of Review

Class certication is governed by Fed. R. Civ. P. 23, which states, in relevant part:

(a) Prerequisites. One or more members of a class may sue or be sued as
representative parties on behalf of all members only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical
> of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests
> of the class.

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is
satisfied and if:

> (1) prosecuting separate actions by or against individual class members
> would create a risk of:

>> (A) inconsistent or varying adjudications with respect to
>> individual class members that would establish incompatible
>> standards of conduct for the party opposing the class; or

>> (B) adjudications with respect to individual class members that, as
>> a practical matter, would be dispositive of the interests of the other
>> members not parties to the individual adjudications or would
>> substantially impair or impede their ability to protect their
>> interests;

> (2) the party opposing the class has acted or refused to act on grounds that
> apply generally to the class, so that final injunctive relief or corresponding
> declaratory relief is appropriate respecting the class as a whole; or

> (3) the court finds that the questions of law or fact common to class
> members predominate over any questions affecting only individual
> members, and that a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

>  (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
>  (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
>  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
>  (D) the likely difficulties in managing a class action.

The Court of Appeals for the Third Circuit recently clarified the type of thorough and rigorous analysis that must be performed to determine whether the prerequisites of Rule 23 are met in the case of *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d at 307 (citations omitted):

> In deciding whether to certify a class under Fed. R. Civ. P. 23, the district court must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties. In this appeal, we clarify three key aspects of class certification procedure. First, the decision to certify a class calls for findings by the court, not merely a "threshold showing" by a party, that each requirement of Rule 23 is met. Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence. Second, the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits-including disputes touching on elements of the cause of action. Third, the court's obligation to consider all relevant evidence and arguments extends to expert testimony, whether offered by a party seeking class certification or by a party opposing it.

The Court emphasized that "a class may not be certified without a finding that each Rule 23 requirement is met." *Id.* at 310.

9

Legal Analysis

Plaintiff contends that this case is a prototypical class action, involving uniform written insurance documents, substantively identical written communications regarding the changed interpretation of "actual charges," and common decision-makers.  Defendant contends that the elements of typicality, adequacy, predominance and superiority are not satisfied.  The Court will address the elements of Rule 23 seriatim.

1.      Numerosity

Plaintiff contends that the proposed class is sufficiently large that joinder would be impractical.  Specifically, Plaintiff contends that Life Investors has issued policies covering more than 398 individuals in Pennsylvania, who are presumably geographically dispersed throughout the Commonwealth.

Defendant does not dispute that the proposed class, as currently defined, meets the numerosity requirement.  Rather, Defendant observes that the class was re-defined after Plaintiff learned that only six persons fell within the initial class definition.  The Court agrees that a Pennsylvania class composed only of persons who have submitted "actual charges" claims would fail the numerosity requirement.  As later addressed in detail, Defendant argues that Plaintiff's effort to satisfy the numerosity requirement has led to irreparable problems as to typicality and adequacy.  Defendant points out that the proposed class definition encompasses all covered persons within Pennsylvania, and notes that the vast majority of the proposed class members have never been "on claim" and have never received "actual charges" benefits.

The Court finds that the numerosity requirement of Rule 23(a)(1) has been met for the class as now defined by Plaintiff.

2.      Commonality

Plaintiff contends that there are numerous questions of law or fact common to the class.

Common questions include, for example, the interpretation of the term "actual charges" in the

context of the identical language in the Policy form; Life Investors' uniform construction of this

term prior to April 2006; Life Investors' uniform revision of its interpretation of this term

beginning on April 1, 2006; and whether Life Investors' changed interpretation of "actual

charges" constitutes breach of contract and/or bad faith.  Plaintiff further contends that the class

is entitled to identical declaratory relief.  Defendant does not dispute that there are common

questions of law and fact.

The Court finds that the commonality requirement of Rule 23(a)(2) has been met.


3.      Typicality

Plaintiff contends that her claims are typical of those of the class.  Specifically, Plaintiff

contends that her claims are aligned with, and do not conflict with, those of absent putative class

members because they arise from Life Investors' uniform administration of "actual charges."

Plaintiff argues that precisely the same conduct was directed toward all class members, namely,

Life Investors' notification and implementation of its decision to change its interpretation of

"actual charges."  Plaintiff argues that if she prevails on her legal theory, the entire class will

necessarily prevail.

Defendant argues that Ms. Smith's claim is not "typical," for several reasons.  First,

Plaintiff has a financially large claim for underpayment of chemotherapy and blood-related

benefits arising from Life Investors' changed interpretation of "actual charges" while the vast

11

majority of other class members have modest claims or no claims.  Second, Defendant contends

that Smith's interests are actually in conflict with those of the majority of the proposed class, as

currently defined.  In essence, Defendant argues that Smith's interpretation of "actual charges"

will enable her to reap a "windfall" recovery at the expense of other policyholders -- who will

end up funding the payment(s) to Smith through higher premiums.  Life Investors notes that the

vast majority of the putative class members have no claims of "actual charges" at all and argues

that they may prefer Defendant's legal position in this litigation.

As an initial matter, the Court agrees with Plaintiff that the proposed class is not fatally

overbroad.   Any unidentified class members should be reasonably ascertainable because they are

spouses or dependent children of policyholders.  Moreover, all policyholders will be affected to

some degree by the manner in which "actual charges" benefits are administered.  Defendant's

overbreadth argument is rejected.

However, it does not follow that all proposed class members will be affected in the same

way.  The typicality analysis must evaluate whether the circumstances of the named plaintiff are

markedly different from those of the absentee class members.  In *Georgine v. Amchem Products,*

*Inc.*, 83 F.3d 610 (3d Cir. 1996), *aff'd Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)

(involving asbestos exposure), the Court summarized the purpose of the typicality element as

follows (citations omitted):

> The typicality requirement is intended to preclude certification of those cases
> where the legal theories of the named plaintiffs potentially conflict with those of
> the absentees. The inquiry assesses whether the named plaintiffs have incentives
> that align with those of absent class members so that the absentees' interests will
> be fairly represented. . . .  '[C]ommonality' like 'numerosity' evaluates the
> sufficiency of the class itself, and 'typicality' like 'adequacy of representation'
> evaluates the sufficiency of the named plaintiff....");. We think that typicality is

> more akin to adequacy of representation: both look to the potential for conflicts in
> the class.

*Id.* at 630-31.  In *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir.1994), the Court explained that

factual differences will not necessarily defeat typicality, particularly where an action challenges a

policy or practice.  However, the Court also recognized that typicality will be lacking due to

intraclass conflicts if the legal theories of the named plaintiffs are at odds with those of the

absentee class members.  *Id.* at 57-58.

In *Georgine*, the Court of Appeals reversed and de-certified a settlement class that

combined currently-injured plaintiffs with expected future claimants.  The Court explained that

the interests of current claimants and potential future claimants were in conflict -- those who are

currently injured rationally seek to maximize current payouts, while future claimants want to

reduce current payments (because they reduce the settlement pot).  83 F.3d at 630-31.  In

addition, the current and future claimants had different incentives regarding protection against

inflation, and whether there should be a delayed opt-out provision.  *Id.*  In sum, neither group

could represent the interest(s) of the other.  *Id.*  The Supreme Court affirmed this analysis in

*Amchem*, 521 U.S. at 626, stating in relevant part:

> In significant respects, the interests of those within the single class are not aligned.
> Most saliently, for the currently injured, the critical goal is generous immediate
> payments. That goal tugs against the interest of exposure-only plaintiffs in
> ensuring an ample, inflation-protected fund for the future.

*Georgine* is controlling because the same conflict exists, even though this case involves cancer,

while *Georgine* involved asbestos. The putative class definition includes: (1) current claimants,

i.e., persons who currently have cancer and have submitted "actual charges" claims; and (2)

possible future claimants, i.e., persons who might be diagnosed with cancer and submit "actual

charges" claims in the future.  *See* Section (iii) of the proposed class definition (which includes persons to whom Life Investors has [currently] purported to pay discounted "actual charges" benefits and persons to whom Life Investors has indicated it will pay such discounted benefits "in the future").

Smith is a current claimant because her husband had been diagnosed with cancer and received treatment which has resulted in her current claim for underpaid "actual charges" benefits.  There are only a handful of other Pennsylvania policyholders that have submitted claims for current "actual charges".  The vast majority of the putative class members have, at most, a potential future claim *if* they are diagnosed with cancer and *if* they submit claims for services for which Life Investors covers "actual charges."  In other words, the conduct of Life Investors in changing its payment of "actual charges" has not yet adversely affected them.

As in *Georgine*, the incentives for current claimants (such as Smith) appear to conflict with the interests of persons with potential/anticipated future claims (such as the majority of the putative class members.)  Simply put, what is best for Smith (i.e., an immediate payment of outstanding claims in the amount actually billed by the medical provider) may not be best for the vast majority of the other persons in the putative class because their insurance premiums are projected to increase.

Plaintiff contends that there is no intraclass conflict and/or that any potential conflict is not sufficiently fundamental.  In support of her argument, she cites several cases (*See* Document No. 148 at 17 n.8) for the proposition that the risk of increased premiums does not defeat a class of current and former policyholders.  The Court accepts Plaintiff's basic contention and agrees that there is not necessarily a direct relationship between a damage award and an increase in

premiums.  However, the cases cited by Plaintiff are unavailing because they do not address conflicts between current claimants and those who may never file a claim, as in *Georgine* and, in any event, the cases are not binding precedent.  Moreover, Defendant has introduced credible evidence to demonstrate the linkage between "actual charges" claims and future premiums.  *See* Declarations of Gwin and Melnick.  Accordingly, *Allen v. Holiday Universal*, 249 F.R.D. 166, 181 (E.D. Pa. 2008), which concluded that intraclass conflicts between current and former members of a healthclub were purely hypothetical, is distinguishable.  Even though Smith remains a policyholder, the sheer size of her individual outstanding claim (in excess of $275,000) far outweighs any concern she might have regarding future premium increases.  In summary, as in *Georgine*, the interests of the current claimants and potential future claimants are in conflict and the circumstances of Ms. Smith are not "typical" of those of the absentee class members.

In accordance with the foregoing, the Court finds that the typicality requirement of Rule 23(a)(3) has not been met.


4.      Adequacy

Plaintiff contends that she is fully capable to adequately represent the class.  Smith contends that no conflicts exist with absent class members, that she is committed to the active pursuit of the class claims and that class counsel is able and qualified.  Defendant contends that Smith cannot serve as the representative plaintiff because she has a fundamental conflict of interest with class members who have not filed claims for "actual charges" and because she lacks the substantive knowledge and interest necessary to represent the interests of absent class members.

The United States Court of Appeals for the Third Circuit has advised that the "adequacy" inquiry has two components.  First, the adequacy inquiry "tests the qualifications of the counsel to represent the class."[5]   Second, it seeks "to uncover conflicts of interest between named parties and the class they seek to represent." *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 532 (3d Cir. 2004) (citations omitted).


A.      Potential Conflict of Interest

The "intraclass conflict" aspect of the adequacy analysis dovetails with the typicality inquiry.  A conflict between the representative's economic interests and those of the other class members will prevent the adequacy element from being met.  *General Tel. Co. v. EEOC*, 446 U.S. 318, 331 (1980); *Accord Georgine*, 83 F.3d at 630.  "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem*, 521 U.S. at 625-26 (citations omitted).

The concerns hereinabove articulated by the Court with respect to typicality also prevent Plaintiff from serving as an adequate class representative.  Smith has not suffered the same injury as most of the absent class members.  Smith has a large, current dispute with Life Investors regarding its treatment of her claim for "actual charges" benefits.  In stark contrast, the vast majority of the putative class members have **_no_** active dispute with Life Investors regarding its interpretation of "actual charges" because they have not submitted any claim.  Smith's economic interest is the immediate payment of her claim in the amounts billed by the medical providers.

---

[5]The Court notes that Plaintiff's attorneys are highly skilled and experienced class action litigators whose qualifications are unchallenged.

16

The majority of the putative class members, who have not asserted claims, simply do not share that economic incentive and may instead prefer to prevent future premium increases.

Life Investors presented the declarations of actuary Steven Gwin, and expert witness Glenn Alan Melnick, Ph.D., for the proposition that increased payouts for "actual charges" would adversely affect Life Investors' claims loss experience and would result in larger than market premium increases for all policyholders. Gwin and Melnick further declare that the increased premiums would result in greater cancellation rates as consumers choose or are forced to drop coverage. Current policyholders who decide to let their coverage lapse as a result of premium increases and who subsequently develop cancer may be harmed by the relief sought by Smith. Plaintiff has not effectively rebutted this evidence.

This precise issue has been faced by two cases in other jurisdictions. In *Pipes v. Life Investors Ins. Co. of America*, 254 F.R.D. 544, 550 (E.D. Ark. 2008) (which involved the same issues), the Court cited the testimony of Gwin and Melnick in finding that the class representatives could not adequately represent the class because they did not share current policyholders' interest in avoiding premium increases. The Court explained:

> The conflict identified by Life Investors goes to the very heart of this litigation because Pipes's claim for monetary relief impacts the economic interests of current policyholders who want affordable insurance rates. The Court agrees that Pipes's interests conflict with other class members and disqualify him as an adequate class representative.

Similarly, in *Metzger v. American Fidelity Assur. Co.*, 249 F.R.D. 375 (W.D. Okla. 2007), the putative class consisted only of persons who had actually filed claims for "actual charges." Nevertheless, the Court denied class certification due to an intraclass conflict between former policyholders and current policyholders, reasoning as follows:

> the likely result of a successful outcome for Plaintiff's proposed class will be an

increase in insurance premiums. Although Plaintiff has proposed a class of
members who have filed claims, some of the purported class members may be
current policyholders who will have to pay the increased premiums unlike
Plaintiff who is not and has never been a policyholder. This places Plaintiff and
her economic incentives at apparent odds with the purported class. Accordingly,
the Court finds that a conflict of interest exists such that the purported class
should not be certified.

*Id.* at 377.   In *Ward v. Dixie National Life Ins. Co.*, 2006 WL 1529398 (D.S.C. 2006), *rev'd on*

*other grounds,* 257 Fed. Appx. 620 (4th Cir. 2007), the Court denied a multi-state class but

certified a statewide class involving "actual charges."  However, the class certified in *Ward*

consisted only of policyholders who had filed "actual charges" claims, and thus avoided the

intraclass conflicts that exist in this case between current claimants such as Smith and potential

future claimants.  In sum, this Court agrees with the reasoning in *Georgine, Metzger* and *Pipes*

and concludes that the intraclass conflict in the putative class prevents Smith from being an

adequate class representative.


   B.  The Ability of Ms. Smith to Serve as Class Representative

  Plaintiff argues that she is entitled to a presumption of adequacy because she attended the

mediation, produced documents, reviewed pleadings and attended her deposition.  Defendant

contends that it has overcome this presumption by introducing affirmative evidence of disinterest

and inability to represent the class.  Defendant cites to *Pipes*, 254 F.R.D. at 550, in which the

Court found that one of the named plaintiffs was inadequate:

   Although Plaintiffs are entitled to rely on the expertise of counsel, a class
representative is inadequate when he has so little knowledge of and involvement
in the case that he is unable to adequately protect class interests against the
possibly competing interests of attorneys. *See Baffa v. Donaldson, Lufkin &*
*Jenrette Securities Corp.*, 222 F.3d 52, 61 (2nd Cir.2000). Given Purifoy's lack of

knowledge and understanding regarding basic policy terms and procedures and his lack of concern regarding the interests of other class members, the Court finds that he will not fairly and adequately protect the interests of the class, and he does not qualify as an adequate class representative.

However, Defendant's reliance on *Pipes* is misplaced, given Third Circuit precedent.  As explained in *Barr v. Harrah's Entertainment, Inc.*, 242 F.R.D. 287, 295 (D.N.J. 2007) (citations omitted), the substantive competence of the named plaintiff is not part of the inquiry:

> A class representative need only possess "a minimal degree of knowledge necessary to meet the adequacy standard." A proposed representative's lack of particularized knowledge concerning the dispute at issue "does not render her inadequate given the fact that she has retained adequate counsel to represent her." . . .  The standard for the adequacy of the class representative is a low one, requiring only "a minimal degree of knowledge." Furthermore, a class representative need not be intimately familiar with the legal theory behind his claims since he is represented by adequate counsel.

*See also New Directions Treatment Services v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007).  The primary focus on the class representative is whether there is a conflict of interest with the class (as discussed above).  The Court recognizes that Ms. Smith has only a very limited understanding of the claims being asserted in this case and testified about nervousness and a poor memory, and that some unique defenses may arise due to the purchase of the Policy from her daughter.  However, these concerns would not prevent Ms. Smith from serving as an adequate class representative if her interests were not in conflict with those of the absent class members.

In accordance with the foregoing, the Court finds that the adequacy requirement of Rule 23(a)(4) has not been met.

5.      Rule 23(b) Predominance and Superiority

Because the Court has determined that the typicality and adequacy prerequisites in Rule

23(a) are not met, it need not address in detail Plaintiff's contention that the putative class

satisfies Rule 23(b)(3).[6]   The Court is not persuaded by Defendant's arguments regarding

predominance.  *In re Linerboard Antitrust Litigation*, 305 F.3d 145, 162-63 (3d Cir. 2002)

(discussing predominance).  In particular, as Plaintiff aptly notes, there are only six class

members for whom Defendant must calculate breach of contract damages.[7]   *Chiang v. Veneman*,

385 F.3d 256, 273 (3d Cir. 2004) (individualized damages calculations do not preclude class

certification).  Moreover, the bad faith alleged in this case relates to a coordinated, company-

wide decision to change the interpretation of "actual charges."

     Defendant's "superiority" arguments are more appealing.  Ms. Smith's damages are large

enough to be pursued individually and other policyholders have also filed individual actions.

Document No. 121 at 41 n.40.   Statutory damages and attorneys fees are recoverable in

successful bad faith claims, which makes such claims viable without a class.  Further, putative

national class actions are under consideration *Gooch* and *Runyan* and there is no compelling

reason to concentrate litigation of the claims in this forum.   Nevertheless, the Court need not, and

does not, make a final determination as to whether Rule 23(b)(3) has been met.

---

     [6]Plaintiff's Amended Motion seeks leave to file a Fourth Amended Complaint, for the
purpose of alleging that certification is appropriate under Rule 23(b)(2) (Declaratory Relief).  In
light of the analysis set forth above, the Court concludes that such an amendment would not cure
the flaws with respect to the Rule 23(a) prerequisites to certification of a class.  Accordingly, the
motion for leave to amend will be **DENIED AS MOOT**.


     [7]Of course, this fact also highlights Plaintiff's shortcomings as to typicality and adequacy.

Conclusion

       Plaintiff has failed to demonstrate that all of the prerequisites in Rule 23(a) have been met.  In particular, the Court concludes that Ms. Smith does not satisfy the requirements of typicality and adequacy.  A person with a large, current claim for underpaid "actual charges" benefits cannot represent a class comprised primarily of persons with only potential future claims for "actual charges" benefits, who may likely be affected by increases in their insurance premiums.  Accordingly, the proposed class will not be certified.

                                    McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM E. SMITH, on behalf of himself and all others similarly situated,** | ) ) | |
| | ) | **2:07-cv-681** |
| **Plaintiff,** | ) | |
| v. | ) | |
| | ) | |
| **LIFE INVESTORS INSURANCE COMPANY OF AMERICA,** | ) ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER OF COURT

AND NOW, this 6th day of November, 2009, in accordance with the foregoing Memorandum Opinion,  PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (Document No. 67) and PLAINTIFF'S AMENDED MOTION FOR CLASS CERTIFICATION (Document No. 150) are **DENIED**.  Plaintiff's motion for leave to amend the complaint for the purpose of alleging that certification is appropriate under Rule 23(b)(2) is **DENIED AS MOOT**.

BY THE COURT:

s/  Terrence F. McVerry
United States District Court Judge

22

cc:    Ellen M. Doyle, Esquire
       Email: edoyle@stemberfeinstein.com

       Colin E. Wrabley, Esquire
       Email: cwrabley@reedsmith.com
       Perry A. Napolitano, Esquire
       Email: pnapolitano@reedsmith.com
       Markham R. Leventhal, Esquire
       Email: ml@jordenusa.com
       Julianna Thomas McCabe, Esquire
       Email: jt@jordenusa.com